UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| U.S. BANK, N.A., | Case No. 2:15-CV-1527 JCM (CWH) |
| Plaintiff(s), | ORDER |
| v. | |
| SFR INVESTMENTS POOL 1, LLC, | |
| Defendant(s). | |

Presently before the court is plaintiff U.S. Bank, N.A.'s ("U.S. Bank") motion for summary judgment. (ECF No. 80). Defendant SFR Investments Pool 1, LLC ("SFR") filed a response (ECF No. 84), to which U.S. Bank replied (ECF No. 91).

Also before the court is SFR's motion for summary judgment. (ECF No. 81). U.S. Bank filed a response (ECF No. 82), to which SFR replied (ECF No. 90).

**I.     Introduction**

This case involves a dispute over real property located at 2839 Bridleton Avenue, North Las Vegas, Nevada, 89081 (the "property").

On July 21, 2005, Vichearith Khuon ("borrower") purchased the property. (ECF No. 80). On July 25, 2005, a deed of trust was recorded against the property securing an amount of $276,150.00. *Id.* The deed of trust identified Universal American Mortgage Company, LLC as the lender, Stewart Title Company as the trustee, and MERS as the beneficiary. *Id.*

On December 15, 2011, an assignment of deed of trust was recorded, whereby U.S. Bank was assigned all beneficial interest in the note and deed of trust. (ECF No. 80).

On June 12, 2009, the borrower filed a voluntary petition for chapter 7 bankruptcy. (ECF No. 80). On September 28, 2009, a discharge of debtor was filed in the borrower's bankruptcy case. *Id.*

On November 17, 2009, a notice of delinquent assessment lien was recorded against the property by Alessi & Koenig, LLC ("A&K"), as agent for Azure Manor/Rancho de Paz Homeowners Association (the "HOA"). (ECF No. 80). The notice stated an amount due of $1,347.14. *Id.* On January 14, 2010, a notice of default and election to sell under homeowners association lien was recorded against the property by A&K on behalf of the HOA. *Id.* The notice stated an amount due of $2,187.14. *Id.*

On June 24, 2010, the final decree was filed in the borrower's bankruptcy case, which stated that the estate was fully administered, the trustee was discharged, and the chapter 7 case was closed. (ECF No. 80).

On September 16, 2010, a notice of trustee's sale was recorded against the property by A&K on behalf of the HOA. (ECF No. 80). The notice stated an amount due of $3,931,44. *Id.*

On November 5, 2010, U.S. Bank's predecessor-in-interest, BAC Home Loans Servicing, LP f/k/a Countrywide Home Loans, Inc. ("BAC"), sent A&K a letter requesting a payoff amount for the superpriority portion of the HOA lien. (ECF No. 80-16). A&K's response on November 9, 2010, indicated a total amount owed of $4,481.44. (ECF No. 80). The response did not specify the superpriority portion of the lien. *Id.* On December 2, 2010, BAC sent a letter to A&K that included a check for $495.00—the amount calculated to be nine months worth of HOA assessments. *Id.* A&K did not accept the check. *Id.*

On August 14, 2012, a notice of trustee's sale was recorded against the property by A&K on behalf of the HOA. (ECF No. 80). The notice stated an amount due of $5,651,44. *Id.*

On September 12, 2012, a foreclosure sale took place whereby SFR acquired the property for $7,500.00. (ECF No. 80). A trustee's deed upon sale was recorded against the property in favor of SFR on September 24, 2012. *Id.*

U.S. Bank alleges the fair market value of the property was $136,000.00 at the time of the foreclosure sale. (ECF No. 80).

On August 11, 2015, U.S. Bank filed its complaint in this action. (ECF No. 1). The complaint alleges the following claims: (1) quiet title/declaratory relief against SFR; and (2) permanent and preliminary injunction against SFR. *Id.*

On February 28, 2018, the court granted MERS and SFR's stipulation to dismiss all crossclaims and counterclaims. (ECF No. 85).

**II.     Legal Standard**

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to be entitled to a denial of summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving

party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

### III. Discussion

As an initial matter, claim (2) of U.S. Bank's complaint will be dismissed without prejudice as the court follows the well-settled rule that a claim for "injunctive relief" standing alone is not a cause of action. *See, e.g.*, *In re Wal-Mart Wage & Hour Emp't Practices Litig.*, 490 F. Supp. 2d 1091, 1130 (D. Nev. 2007); *Tillman v. Quality Loan Serv. Corp.*, No. 2:12-CV-346 JCM RJJ, 2012 WL 1279939, at *3 (D. Nev. Apr. 13, 2012) (finding that "injunctive relief is a remedy, not an

independent cause of action"); *Jensen v. Quality Loan Serv. Corp.*, 702 F. Supp. 2d 1183, 1201 (E.D. Cal. 2010) ("A request for injunctive relief by itself does not state a cause of action.").

In SFR's motion, it contends that summary judgment in its favor is proper because, *inter alia*, the foreclosure sale extinguished U.S. Bank's deed of trust pursuant to NRS 116.3116 and *SFR Investments*. (ECF No. 81). SFR further contends that the foreclosure sale should not be set aside because the price paid at the foreclosure sale was commercially reasonable, the HOA complied with all notice requirements under NRS 116 and U.S. Bank received actual notice, U.S. Bank has not shown fraud, unfairness, or oppression as outlined in *Shadow Wood Homeowners Assoc. v. N.Y. Cmty. Bancorp., Inc.*, 366 P.3d 1105 (Nev. 2016) ("*Shadow Wood*"), and U.S. Bank's attempted tender of the superpriority portion of the lien was not a true tender and was properly rejected. (ECF No. 81). The court agrees.

Under Nevada law, "[a]n action may be brought by any person against another who claims an estate or interest in real property, adverse to the person bringing the action for the purpose of determining such adverse claim." Nev. Rev. Stat. § 40.010. "A plea to quiet title does not require any particular elements, but each party must plead and prove his or her own claim to the property in question and a plaintiff's right to relief therefore depends on superiority of title." *Chapman v. Deutsche Bank Nat'l Trust Co.*, 302 P.3d 1103, 1106 (Nev. 2013) (citations and internal quotation marks omitted). Therefore, for a party to succeed on a quiet title claim, it needs to show that its claim to the property is superior to all others. *See also Breliant v. Preferred Equities Corp.*, 918 P.2d 314, 318 (Nev. 1996) ("In a quiet title action, the burden of proof rests with the plaintiff to prove good title in himself.").

Section 116.3116(1) of the Nevada Revised Statutes[1] gives an HOA a lien on its homeowners' residences for unpaid assessments and fines; moreover, NRS 116.3116(2) gives priority to that HOA lien over all other liens and encumbrances with limited exceptions—such as "[a] first security interest on the unit recorded before the date on which the assessment sought to be enforced became delinquent." Nev. Rev. Stat. § 116.3116(2)(b).

---

[1] The 2015 Legislature revised Chapter 116 substantially. 2015 Nev. Stat., ch. 266. Except where otherwise indicated, the references in this order to statutes codified in NRS Chapter 116 are to the version of the statutes in effect in 2011–13, when the events giving rise to this litigation occurred.

The statute then carves out a partial exception to subparagraph (2)(b)'s exception for first security interests. *See* Nev. Rev. Stat. § 116.3116(2). In *SFR Investment Pool 1 v. U.S. Bank*, the Nevada Supreme Court provided the following explanation:

> As to first deeds of trust, NRS 116.3116(2) thus splits an HOA lien into two pieces, a superpriority piece and a subpriority piece. The superpriority piece, consisting of the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges, is "prior to" a first deed of trust. The subpriority piece, consisting of all other HOA fees or assessments, is subordinate to a first deed of trust.

334 P.3d 408, 411 (Nev. 2014) ("*SFR Investments*").

Chapter 116 of the Nevada Revised Statutes permits an HOA to enforce its superpriority lien by nonjudicial foreclosure sale. *Id.* at 415. Thus, "NRS 116.3116(2) provides an HOA a true superpriority lien, proper foreclosure of which will extinguish a first deed of trust." *Id.* at 419; *see also* Nev. Rev. Stat. § 116.31162(1) (providing that "the association may foreclose its lien by sale" upon compliance with the statutory notice and timing rules).

Subsection (1) of NRS 116.31166 provides that the recitals in a deed made pursuant to NRS 116.31164 of the following are conclusive proof of the matters recited:

> (a) Default, the mailing of the notice of delinquent assessment, and the recording of the notice of default and election to sell;
> (b) The elapsing of the 90 days; and
> (c) The giving of notice of sale[.]

Nev. Rev. Stat. § 116.31166(1)(a)–(c).[2] "The 'conclusive' recitals concern default, notice, and publication of the [notice of sale], all statutory prerequisites to a valid HOA lien foreclosure sale

---

[2] The statute further provides as follows:

> 2. Such a deed containing those recitals is conclusive against the unit's former owner, his or her heirs and assigns, and all other persons. The receipt for the purchase money contained in such a deed is sufficient to discharge the purchaser from obligation to see to the proper application of the purchase money.
>
> 3. The sale of a unit pursuant to NRS 116.31162, 116.31163 and 116.31164 vests in the purchaser the title of the unit's owner without equity or right of redemption.

Nev. Rev. Stat. § 116.31166(2)–(3).

as stated in NRS 116.31162 through NRS 116.31164, the sections that immediately precede and give context to NRS 116.31166." *Shadow Wood Homeowners Assoc. v. N.Y. Cmty. Bancorp., Inc.*, 366 P.3d 1105 (Nev. 2016) ("*Shadow Wood*"). Nevertheless, courts retain the equitable authority to consider quiet title actions when a HOA's foreclosure deed contains statutorily conclusive recitals. *See id.* at 1112.

Here, the parties have provided the recorded notice of delinquent assessment, the recorded notice of default and election to sell, the recorded notice of trustee's sale, and the recorded trustee's deed upon sale. *See* (ECF No. 1-4, 1-5, 1-10, 1-7). Pursuant to NRS 116.31166, these recitals in the recorded foreclosure deed are conclusive to the extent that they implicate compliance with NRS 116.31162 through NRS 116.31164, which provide the statutory prerequisites of a valid foreclosure. *See id.* at 1112 ("[T]he recitals made conclusive by operation of NRS 116.31166 implicate compliance only with the statutory prerequisites to foreclosure."). Therefore, pursuant to NRS 116.31166 and the recorded foreclosure deed, the foreclosure sale is valid to the extent that it complied with NRS 116.31162 through NRS 116.31164.

Importantly, while NRS 116.3116 accords certain deed recitals conclusive effect—*e.g.*, default, notice, and publication of the notice of sale—it does not conclusively, as a matter of law, entitle defendants to success on the parties' quiet title claims. *See Shadow Wood*, 366 P.3d at 1112 (rejecting contention that NRS 116.31166 defeats, as a matter of law, actions to quiet title). Thus, the question remains whether plaintiff has demonstrated sufficient grounds to justify setting aside the foreclosure sale. *See id.*

"When sitting in equity . . . courts must consider the entirety of the circumstances that bear upon the equities. This includes considering the status and actions of all parties involved, including whether an innocent party may be harmed by granting the desired relief." *Id.*

U.S. Bank raises the following grounds in support of its motions for summary judgment: (1) the constitutionality of NRS 116.3116 and the Ninth Circuit decision in *Bourne Valley Court Trust v. Wells Fargo Bank, N.A.*, 832 F.3d 1154 (9th Cir. 2016) ("*Bourne Valley*"); (2) rejected tender; (3) inadequate notice; (4) recordation of the notice of delinquent assessment lien and notice of default during the borrower's bankruptcy voids the HOA foreclosure sale as a matter of law; (5)

the foreclosure deed recitals do not establish the HOA foreclosed on the superpriority lien; (6) commercial reasonability under *Shadow Wood*; and (7) the CC&R provisions preclude the extinguishment of the first deed of trust. (ECF No. 80). As set forth in further detail below, the court finds that U.S. Bank has failed to demonstrate it is entitled to summary judgment.

### 1. *Due process*

U.S. Bank's motion for summary judgment argues that NRS Chapter 116 is unconstitutional under *Bourne Valley*, wherein the Ninth Circuit held that the HOA foreclosure statute is facially unconstitutional. (ECF No. 80). U.S. Bank further contends that *Bourne Valley* renders any factual issues concerning actual notice irrelevant. *Id.*

The Ninth Circuit held that NRS 116.3116's "opt-in" notice scheme, which required a HOA to alert a mortgage lender that it intended to foreclose only if the lender had affirmatively requested notice, facially violated mortgage lenders' constitutional due process rights. *Bourne Valley*, 832 F.3d at 1157–58. The facially unconstitutional provision, as identified in *Bourne Valley*, exists in NRS 116.31163(2). *See id.* at 1158. At issue is the "opt-in" provision that unconstitutionally shifts the notice burden to holders of the property interest at risk. *See id.*

"A first deed of trust holder only has a constitutional grievance if he in fact did not receive reasonable notice of the sale at which his property rights was extinguished." *Wells Fargo Bank, N.A. v. Sky Vista Homeowners Ass'n*, No. 315CV00390RCJVPC, 2017 WL 1364583, at *4 (D. Nev. Apr. 13, 2017). To state a procedural due process claim, a claimant must allege "(1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998). U.S. Bank has failed on both prongs.

Here, U.S. Bank has failed to show that it did not receive proper notice. The fact that U.S. Bank's predecessor-in-interest contacted A&K regarding the pending foreclosure sale demonstrates that U.S. Bank's predecessor-in-interest had notice of the sale. Therefore, U.S. Bank's due process argument fails as a matter of law. *See, e.g.*, *Spears v. Spears*, 596 P.2d 210, 212 (Nev. 1979) ("The rule is well established that one who is not prejudiced by the operation of a statute cannot question its validity.").

Further, U.S. Bank confuses constitutionally mandated notice with the notices required to conduct a valid foreclosure sale. Due process does not require actual notice. *Jones v. Flowers*, 547 U.S. 220, 226 (2006). Rather, it requires notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *see also Bourne Valley*, 832 F.3d at 1158.

Accordingly, U.S. Bank's challenge based on due process and *Bourne Valley* fails as a matter of law, and U.S. Bank's motion for summary judgment will be denied as it relates to these grounds.

### 2. Tender

U.S. Bank contends that the deed of trust still encumbers the property because the HOA/A&K wrongfully rejected U.S. Bank's predecessor-in-interest's tender of the superpriority amount. (ECF No. 80). The court disagrees, as U.S. Bank's predecessor-in-interest did not tender an amount sufficient to extinguish the HOA's superpriority lien.

Under NRS 116.31166(1), the holder of a first deed of trust may pay off the superpriority portion of an HOA lien to prevent the foreclosure sale from extinguishing that security interest. *See* Nev. Rev. Stat. § 116.31166(1); *see also SFR Investments*, 334 P.3d at 414 ("But as a junior lienholder, BOA could have paid off the SHHOA lien to avert loss of its security . . . ."); *see also, e.g.*, *7912 Limbwood Ct. Trust v. Wells Fargo Bank, N.A., et al.*, 979 F. Supp. 2d 1142, 1149 (D. Nev. 2013) ("If junior lienholders want to avoid this result, they readily can preserve their security interests by buying out the senior lienholder's interest." (citing *Carillo v. Valley Bank of Nev.*, 734 P.2d 724, 725 (Nev. 1987); *Keever v. Nicholas Beers Co.*, 611 P.2d 1079, 1083 (Nev. 1980))).

The superpriority lien portion, however, consists of "the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges," while the subpriority piece consists of "all other HOA fees or assessments." *SFR Investments*, 334 P.3d at 411 (emphasis added); *see also 7912 Limbwood Ct. Trust*, 979 F. Supp. 2d at 1150 ("The superpriority lien consists only of unpaid assessments and certain charges specifically identified in § 116.31162."); *Horizons at Seven Hills Homeowners Association v. Ikon Holdings, LLC*, 373 P.3d 66 (Nev. 2016) ("*SFR*

characterized the superpriorty piece as including 'the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges.'").

Here, U.S. Bank's predecessor-in-interest presumed that the amount set forth in the response from A&K included more than the superpriority lien portion and that a lesser amount be sufficient to preserve its interest in the property. *See generally, e.g.*, Nev. Rev. Stat. § 107.080 (allowing trustee's sale under a deed of trust only when a subordinate interest has failed to make good the deficiency in performance or payment for 35 days); Nev. Rev. Stat. § 40.430 (barring judicially ordered foreclosure sale if the deficiency is made good at least 5 days prior to sale).

After failing to use the legal remedies available to U.S. Bank and its predecessors-in-interest to prevent the property from being sold to a third party—for example, seeking a temporary restraining order and preliminary injunction (*see* Nev. Rev. Stat. §§ 14.010, 40.060)—U.S. Bank now seeks to profit from it and its predecessor's failure to follow the rules set forth in the statutes. *See generally, e.g.*, *Barkley's Appeal. Bentley's Estate*, 2 Monag. 274, 277 (Pa. 1888) ("In the case before us, we can see no way of giving the petitioner the equitable relief she asks without doing great injustice to other innocent parties who would not have been in a position to be injured by such a decree as she asks if she had applied for relief at an earlier day."); *Nussbaumer v. Superior Court in & for Yuma Cty.*, 489 P.2d 843, 846 (Ariz. 1971) ("Where the complaining party has access to all the facts surrounding the questioned transaction and merely makes a mistake as to the legal consequences of his act, equity should normally not interfere, especially where the rights of third parties might be prejudiced thereby.").

Accordingly, U.S. Bank's argument regarding tender does not entitle it to judgment as a matter of law.

### 3. *Inadequate notice*

U.S. Bank argues that the notices in this case was statutorily inadequate because they included additional fees and costs beyond the superpriority amount as defined by NRS 116.3116. (ECF No. 80). This argument was considered and rejected by the court in *SFR Investments*:

> U.S. Bank further complains about the content of the notice it received. It argues that due process requires specific notice indicating the amount of the superpriority piece of the lien and explaining how the beneficiary of the first deed of trust can prevent

> the superpriority foreclosure sale. But it appears from the record that specific lien amounts were stated in the notices, ranging from $1,149.24 when the notice of delinquency was recorded to $4,542.06 when the notice of sale was sent. The notices went to the homeowner and other junior lienholders, not just U.S. Bank, so it was appropriate to state the total amount of the lien. As U.S. Bank argues elsewhere, dues will typically comprise most, perhaps even all, of the HOA lien. *See supra* note 3. And from what little the record contains, nothing appears to have stopped U.S. Bank from determining the precise superpriority amount in advance of the sale or paying the entire amount and requesting a refund of the balance. *Cf. In re Medaglia*, 52 F.3d 451, 455 (2d Cir.1995) ("[I]t is well established that due process is not offended by requiring a person with actual, timely knowledge of an event that may affect a right to exercise due diligence and take necessary steps to preserve that right.").

334 P.3d at 418. Accordingly, the court holds that the notices in this case did not render the foreclosure sale statutorily defective.

### *4. Bankruptcy stay*

U.S. Bank also argues that the HOA recorded its notice of delinquent assessment lien and notice of default in violation of the automatic stay resulting from the borrower's bankruptcy. (ECF No. 80). The borrower is not a party to this action, and plaintiff does not demonstrate that it has standing to raise arguments on behalf of the borrower. *See Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004) (holding that in order to invoke third-party standing a plaintiff must demonstrate that the party asserting the right has a "close" relationship with the person who possesses the right and that there is a "hindrance" to the possessor's ability to assert his own interests.").

### *5. Commercial reasonability*

SFR argues that the foreclosure sale was commercially reasonable because the sale price was not grossly inadequate given the conditions under which the property was sold and because U.S. Bank has not presented any evidence of fraud, unfairness, or oppression. (ECF No. 81).

U.S. Bank argues that the foreclosure sale was commercially unreasonable because the property sold at approximately 5% of its fair market value,[3] which is grossly inadequate so as to justify setting the foreclosure aside. (ECF No. 80). However, U.S. Bank overlooks the reality of

---

[3] Here, the foreclosure sale price was $7,500.00 and the fair market value as estimated by U.S. Bank was $136,000.00. (ECF No. 80).

the foreclosure process. The amount of the lien—not the fair market value of the property—is what typically sets the sales price.

NRS 116.3116 codifies the Uniform Common Interest Ownership Act ("UCIOA") in Nevada. *See* Nev. Rev. Stat. § 116.001 ("This chapter may be cited as the Uniform Common-Interest Ownership Act"); *see also SFR Investments*, 334 P.3d at 410. Numerous courts have interpreted the UCIOA and NRS 116.3116 as imposing a commercial reasonableness standard on foreclosure of association liens.[4]

In *Shadow Wood*, the Nevada Supreme Court held that an HOA's foreclosure sale may be set aside under a court's equitable powers notwithstanding any recitals on the foreclosure deed where there is a "grossly inadequate" sales price and "fraud, unfairness, or oppression." 366 P.3d at 1110; *see also Nationstar Mortg., LLC v. SFR Invs. Pool 1, LLC*, 184 F. Supp. 3d 853, 857–58 (D. Nev. 2016). In other words, "demonstrating that an association sold a property at its foreclosure sale for an inadequate price is not enough to set aside that sale; there must also be a showing of fraud, unfairness, or oppression." *Id*. at 1112; *see also Long v. Towne*, 639 P.2d 528, 530 (Nev. 1982) ("Mere inadequacy of price is not sufficient to justify setting aside a foreclosure sale, absent a showing of fraud, unfairness or oppression." (citing *Golden v. Tomiyasu*, 387 P.2d 989, 995 (Nev. 1963) (stating that, while a power-of-sale foreclosure may not be set aside for mere inadequacy of price, it may be if the price is grossly inadequate and there is "in addition proof of some element of fraud, unfairness, or oppression as accounts for and brings about the inadequacy of price" (internal quotation omitted)))).

---

[4] *See, e.g.*, *Bayview Loan Servicing, LLC v. Alessi & Koenig, LLC*, 962 F. Supp. 2d 1222, 1229 (D. Nev. 2013) ("[T]he sale for $10,000 of a Property that was worth $176,000 in 2004, and which was probably worth somewhat more than half as much when sold at the foreclosure sale, raises serious doubts as to commercial reasonableness."); *SFR Investments*, 334 P.3d at 418 n.6 (noting bank's argument that purchase at association foreclosure sale was not commercially reasonable); *Thunder Props., Inc. v. Wood*, No. 3:14-cv-00068-RCJ-WGC, 2014 WL 6608836, at *2 (D. Nev. Nov. 19, 2014) (concluding that purchase price of "less than 2% of the amounts of the deed of trust" established commercial unreasonableness "almost conclusively"); *Rainbow Bend Homeowners Ass'n v. Wilder*, No. 3:13-cv-00007-RCJ-VPC, 2014 WL 132439, at *2 (D. Nev. Jan. 10, 2014) (deciding case on other grounds but noting that "the purchase of a residential property free and clear of all encumbrances for the price of delinquent HOA dues would raise grave doubts as to the commercial reasonableness of the sale under Nevada law"); *Will v. Mill Condo. Owners' Ass'n*, 848 A.2d 336, 340 (Vt. 2004) (discussing commercial reasonableness standard and concluding that "the UCIOA does provide for this additional layer of protection").

The *Shadow Wood* court did not adopt the restatement. *Compare Shadow Wood*, 366 P.3d at 1112–13 (citing the restatement as secondary authority to warrant use of the 20% threshold test for grossly inadequate sales price), *with St. James Village, Inc. v. Cunningham*, 210 P.3d 190, 213 (Nev. 2009) (explicitly adopting § 4.8 of the Restatement in specific circumstances); *Foster v. Costco Wholesale Corp.*, 291 P.3d 150, 153 (Nev. 2012) ("[W]e adopt the rule set forth in the Restatement (Third) of Torts: Physical and Emotional Harm section 51."); *Cucinotta v. Deloitte & Touche, LLP*, 302 P.3d 1099, 1102 (Nev. 2013) (affirmatively adopting the Restatement (Second) of Torts section 592A). Because Nevada courts have not adopted the relevant section of the restatement at issue here, the *Long* test, which requires a showing of fraud, unfairness, or oppression in addition to a grossly inadequate sale price to set aside a foreclosure sale, controls. *See* 639 P.2d at 530.

Nevada has not clearly defined what constitutes "unfairness" in determining commercial reasonableness. The few Nevada cases that have discussed commercial reasonableness state, "every aspect of the disposition, including the method, manner, time, place, and terms, must be commercially reasonable." *Levers v. Rio King Land & Inv. Co.*, 560 P.2d 917, 920 (Nev. 1977). This includes "quality of the publicity, the price obtained at the auction, [and] the number of bidders in attendance." *Dennison v. Allen Grp. Leasing Corp.*, 871 P.2d 288, 291 (Nev. 1994) (citing *Savage Constr. v. Challenge–Cook*, 714 P.2d 573, 574 (Nev. 1986)).

Here, U.S. Bank fails to set forth sufficient evidence to show fraud, unfairness, or oppression so as to justify the setting aside of the foreclosure sale. U.S. Bank relies on its assertion that its predecessor-in-interest tendered the superpriority amount to show fraud, unfairness, or oppression. *See* (ECF No. 80). However, as discussed in the previous section, the amount due was set forth in the letter from A&K. Rather than tendering the noticed amount under protest so as to preserve its interest and then later seeking a refund of the difference in dispute, U.S. Bank sent A&K a check for what it calculated as the superpriority portion of the lien. This is insufficient to satisfy the requirements for sufficient tender. U.S. Bank's other arguments regarding commercial reasonability mimic arguments made elsewhere in its motion. *See* (ECF No. 80). The

court need not re-address[5] each argument here, for none of them demonstrate fraud, unfairness, or oppression.

Accordingly, U.S. Bank's commercial reasonability argument fails as a matter of law, as it has not set forth evidence of fraud, unfairness, or oppression. *See, e.g.*, *Nationstar Mortg., LLC v. SFR Investments Pool 1, LLC*, No. 70653, 2017 WL 1423938, at *2 n.2 (Nev. App. Apr. 17, 2017) ("Sale price alone, however, is never enough to demonstrate that the sale was commercially unreasonable; rather, the party challenging the sale must also make a showing of fraud, unfairness, or oppression that brought about the low sale price.").

### 6. *The CC&Rs*

U.S. Bank cites the CC&Rs' mortgage protection clause as evidence that U.S. Bank's deed of trust survived foreclosure. (ECF No. 80). The Supreme Court of Nevada has explicitly rejected U.S. Bank's implied argument that a mortgage protection clause can supersede the statutory structure of NRS 116.3116. *See SFR Investments*, 334 P.3d at 418-19.

U.S. Bank also argues that the mortgage protection clause in the CC&Rs provides evidence of "unfairness" sufficient to set aside the foreclosure sale as commercially unreasonable. (ECF No. 80). This court has ruled that language in a mortgage protection clause purporting to subordinate a HOA lien to the first deed of trust does not, without more, constitute unfairness in the context of a HOA foreclosure. *See, e.g.*, *Bank of America, N.A. v. Hollow de Oro Homeowners Association*, --- F. Supp. 3d. ----, 2018 WL 523354 (D. Nev. Jan. 23, 2018).

### IV. Conclusion

In light of the foregoing, SFR has shown that it is entitled to judgment as a matter of law. The parties have provided the recorded foreclosure deed in SFR's favor, which is conclusive of the recitals contained therein, and has shown that SFR's interest in the property is superior to that of U.S. Bank's interest. On the other hand, the court finds that U.S. Bank has failed to show that it is entitled to judgment as a matter of law on its quiet title claim against SFR. Further, U.S. Bank has provided no grounds to justify setting aside the foreclosure sale. Therefore, the court will grant

---

[5] The court considers U.S. Bank's arguments regarding the CC&Rs in the next section of this order.

James C. Mahan
U.S. District Judge

- 14 -

SFR's motion for summary judgment (ECF No. 81) and deny U.S. Bank's motion for summary judgment (ECF No. 80).

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that U.S. Bank's motion for summary judgment (ECF No. 80) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that SFR's first motion for summary judgment (ECF No. 81) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that the SFR shall prepare and submit a proposed judgment consistent with the foregoing within thirty (30) days of the date of this order.

DATED July 3, 2018.

_____
UNITED STATES DISTRICT JUDGE